### No. 80SA106

**In re the Marriage of Sharon Kay Glickman v. Charles Duane Mesigh**

(615 P.2d 23)

Decided August 5, 1980.

Jerry L. Valentine, for petitioner-appellee.

Nathan Lee Baum, for respondent-appellant.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The respondent-appellant, Charles Duane Mesigh, brings this appeal from an order of the district court modifying a child support provision in a California decree of dissolution.[1] The action in the district court was commenced by the petitioner-appellee, Sharon Kay Glickman, under section 14-11-101, C.R.S. 1973 (1979 Supp.). We affirm the judgment.

Sharon Kay Glickman (petitioner) and Charles Duane Mesigh (respondent) were divorced on June 8, 1971, pursuant to an interlocutory decree of dissolution entered by the superior court of Santa Clara County, State of California. A final decree of dissolution was entered on November 30, 1971. The California decree awarded custody of the couple's only child, Toni Michele Mesigh, to the petitioner. The respondent was not required to pay child support at that time, but the decree expressly provided that the provisions for child support "are subject to modification . . . by any court of competent jurisdiction, upon the motion of either of the parties and the proper showing of changed conditions justifying modifications."

On January 18, 1978, petitioner filed a petition for child support, asserting that she was unable to provide necessary support for the minor child without financial assistance from the respondent. The trial court allowed the petitioner to file an amended petition under section 14-11-101, C.R.S. 1973 (1979 Supp.), which provides for the enforcement and modification of foreign decrees and judgments in cases for support of minor children. At the commencement of the Colorado action petitioner and her daughter resided in Virgina and respondent resided in Colorado. Personal service was effected on respondent in Colorado.

The trial proceedings were prolonged and complicated due to disputes relating to pleading and discovery. The petitioner originally failed to list her address on the complaint and the respondent moved to dismiss the petition. This information was subsequently furnished by letter to the respondent and the court denied the motion to dismiss. The respondent also

---

[1] This appeal was originally filed in the court of appeals and subsequently was transferred to this court pursuant to section 13-4-110(1)(a), C.R.S. 1973.

filed a motion for a cost bond under section 13-16-101, C.R.S. 1973, and the trial court denied that motion. Respondent sought extensive discovery of financial data about petitioner's sources of income. The trial court denied respondent's motion to compel additional discovery and entered a protective order on behalf of petitioner.

On November 28, 1978, a hearing was held on the petition for child support and the court found that the financial conditions of the parties had changed substantially since the entry of the California decree. Accordingly, the court modified the California decree to require a payment by the respondent of $300 per month as child support commencing on December 1, 1978.

The respondent on this appeal asserts several grounds for reversal: the trial court lacked jurisdiction to enter the order of child support under section 14-11-101, C.R.S. 1973 (1979 Supp.); alternatively, if the trial court did have jurisdiction, the award of $300 per month child support was grossly excessive; the trial court erred in not dismissing the complaint for failure of the respondent to list her address, and additionally erred in failing to order a cost bond; and the trial court erred in its discovery rulings.

## I. JURISDICTION

The respondent argues that the district court lacked jurisdiction to enter the order for child support under section 14-11-101, C.R.S. 1973 (1979 Supp.), because such order is in violation of the full faith and credit clause of Article IV, Section 1, of the United States Constitution. That constitutional provision mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." *See* 28 U.S.C.A. § 1738.

■ The full faith and credit clause requires that the California decree be enforced in courts of this state to the extent that it is final and unmodifiable. *See, e.g., Barber v. Barber,* 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); *Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); *Gruber v. Wallner,* 198 Colo. 235, 598 P.2d 135 (1979); *Potter v. Potter,* 131 Colo. 14, 278 P.2d 1020 (1955). However, Colorado courts need not give conclusive effect to a foreign decree when that decree is subject to modification by the courts of the rendering state. *See, e.g., People ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 137, 91 L.Ed. 1133 (1947); *Gruber v. Wallner, supra; Potter v. Potter, supra; Mock v. Mock,* 155 N.J. Super. 282, 382 A.2d 702 (1977); *Mittenthal v. Mittenthal,* 99 Misc.2d 778, 417 N.Y.S.2d 175 (1979); *In re Sagan,* 396 A.2d 450 (Pa. Super. 1978). When a modifiable decree of a sister state is before a Colorado court, the full faith and credit clause permits the Colorado courts to alter or modify it, just as the rendering state could. *See, e.g., People ex rel. Halvey v. Halvey, supra; Barber v. Barber, supra; Vincent v. Vincent,* 38 N.C. App. 580, 248 S.E.2d 410 (1978); *McCullough v. Hudspeth,* 389 A.2d 1242 (R.I. 1978); *Restatement*

*(Second) of Conflicts of Laws* § 109 (1971). Thus, since the California decree expressly provided for modification upon changed circumstances, the Colorado court had as much leeway to modify or alter the California decree as did the California court which rendered it.

■ Section 14-11-101, C.R.S. 1973 (1979 Supp.), clearly gives Colorado courts subject matter jurisdiction over foreign judgments for support of minor children:

"(1) Upon the docketing in a court of competent jurisdiction in this state of exemplified copies of all the written pleadings and court orders, judgments, and decrees in a case of divorce, separate maintenance, or annulment, or for support of minor children or a spouse, or for a combination of the same entered in any court of competent jurisdiction in any other state or jurisdiction having reciprocal provisions for a like enforcement of orders, judgments, or decrees entered in the state of Colorado and upon obtaining jurisdiction by personal service of process as provided by the Colorado rules of civil procedure, said court in this state shall have jurisdiction over the subject matter and of the person in like manner as if the original suit or action had been commenced in this state, and is empowered to amend, modify, set aside, and make new orders as the court may find necessary and proper so as to do justice and equity to all parties to the action according to the public policy of this state, and has the same right, power, and authority to enter orders for temporary alimony, support money, and attorneys' fees as in similar actions originating in this state."

This statute reflects a legislative effort to prevent the state of Colorado from becoming a haven for a parent against whom minimal or, as in this case, no support orders have been entered in the jurisdiction of rendition by granting Colorado courts explicit authority to enter appropriate orders in a manner consistent with the full faith and credit clause.[2] *See generally Woodhouse v. Woodhouse,* 17 N.J. 409, 111 A.2d 631 (1955). Both the California judgment and California statutory law provide for modification of support orders upon a showing of conditions similar to those demonstrated here. Cal. Civ. Code §§ 4700, 4811 (West Supp. 1980). California law also provides for like enforcement of foreign support orders under conditions substantially identical to those set forth in section 14-11-101, C.R.S. 1973 (1979 Supp.). Cal. Civ. Proc. § 1699 (West Supp. 1980).

---

[2] A proceeding to enforce a foreign judgment of support under section 14-11-101, C.R.S. 1973 (1979 Supp.), is one of several remedies available to a custodial parent seeking support from a non-custodial parent. Other remedies include a proceeding under the Uniform Enforcement of Foreign Judgments Act, section 13-53-101 *et seq.,* C.R.S. 1973, and a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act (URESA), section 14-5-101 *et seq.,* C.R.S. 1973. Section 14-5-104 of URESA states that the remedies provided therein are in addition to and not in substitution for any other remedies.

■ The respondent correctly points out that this court in *Minnear v. Minnear,* 131 Colo. 319, 281 P.2d 517 (1955), held unconstitutional C.R.S. '53, 46-4-1, which dealt with enforcement of foreign decrees and was the predecessor to section 14-11-101, C.R.S. 1973 (1979 Supp.). In that case the former husband commenced an action in Colorado to set aside a property settlement agreement incorporated into a Florida divorce decree on grounds of fraud. Although the complaint requested the court to declare the Florida decree void, jurisdiction, nevertheless, was invoked under C.R.S. '53, 46-4-1. Because the statute addressed only the *enforcement* of foreign decrees, it had no application to a complaint to *set aside* a foreign decree. In holding that the complaint did not sufficiently state a claim to set aside the foreign judgment on grounds of fraud, *Minnear* stated that the legislature lacked constitutional authority to adopt the statute in question because it violated Article IV, Section 1, of the United States Constitution. To the extent that *Minnear* might be read to prohibit Colorado courts from modifying a foreign decree that is subject to alteration by the courts of the rendering state, we expressly overrule it. *Minnear* is contrary to the overwhelming weight of authority which we find persuasive. *See, e.g., People ex rel. Halvey v. Halvey, supra; Barber v. Barber, supra; Gruber v. Wallner, supra; Potter v. Potter, supra; Elkind v. Byck,* 68 Cal. 2d 453, 439 P.2d 316, 67 Cal. Rptr. 404 (1968); *Mock v. Mock, supra; Woodhouse v. Woodhouse, supra; Mittenthal v. Mittenthal, supra; Vincent v. Vincent, supra; In re Sagan, supra; McCullough v. Hudspeth, supra; see also Restatement (Second) of Conflicts of Laws* § 109 (1971); Comment, *Interstate Modification of Support Decrees,* 28 Rocky Mt. L. Rev. 355 (1956).

■ Subsequent to *Minnear* the legislature has consistently re-enacted, with only minor amendments in form, the provisions of the original foreign decree statute adopted in 1947. Colo. Sess. Laws 1947, ch. 178 at 398; C.R.S. '53, 46-4-1; C.R.S. 1963, 46-4-1; section 14-11-101, C.R.S. 1973 (1979 Supp.). We hold that the legislature, in re-enacting section 14-11-101, C.R.S. 1973 (1979 Supp.), did grant Colorado courts power to modify or alter a foreign judgment for child support under the circumstances present here, and such legislation does not offend the full faith and credit clause of the United States Constitution. *U.S. Const.* Art. IV, Sec. 1.[3]

---

[3] In this case the order of modification by which the court ordered the respondent to pay child support in the amount of $300 per month was in keeping with the statutory policy of California, Cal. Civ. Code §§ 4700, 4811 (West Supp. 1980), and was also consistent with the law of Colorado under the circumstances present here. *See* section 14-10-122(1), C.R.S. 1973. We do not decide whether a Colorado court, consistent with the full faith and credit clause, could modify a foreign judgment for support under section 14-11-101 in accordance with Colorado statutory policy when that policy is substantially different from or inconsistent with the statutory policy of the state of rendition. *See Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943).

## II. THE ORDER FOR SUPPORT

█ Respondent argues that even if the trial court had subject matter jurisdiction, nevertheless the award of $300 per month child support was grossly excessive. We find this argument totally lacking in merit.

In June 1971, when the California decree was entered, the respondent was earning approximately $700 per month. When the November 1978 order was entered in this case, he was earning approximately $2,500 per month. The petitioner's monthly income in November 1978 was $1,145 per month, attributable primarily to trust income and dividends; and, according to the trial court, she had the potential of earning an additional $400 to $500 per month during 1979.

When the California decree was entered in June 1971, the minor child was one year old and required minimal expenses. When the district court entered the November 1978 order in this case, the child was eight years old and required substantial monthly expenditures for schooling, health needs, baby sitting, food and clothing. The trial court found that the monthly expenses for the petitioner and her minor child amounted to $2,020.

Under these circumstances we find that the district court's award of $300 per month child support was based upon a showing of changed circumstances that warranted a modification of the 1971 California decree. *See* section 14-10-122(1), C.R.S. 1973; Cal. Civ. Code §§ 4700, 4811 (West Supp. 1980).

## III. THE PETITIONER'S ADDRESS AND THE COST BOND

The respondent contends that the trial court erred in refusing to dismiss the complaint upon the petitioner's failure to list her address thereon, and the trial court also erred in failing to order a cost bond.

█ The omission of the petitioner's address in the complaint was an oversight which was cured shortly after it was brought to the attention of the court and the petitioner. The original failure to comply with C.R.C.P. 11 by omitting the address of the party does not warrant dismissal of an action. The omission may be corrected, as it was in this case. *See Harris v. Municipal Court,* 123 Colo. 539, 234 P.2d 1055 (1951).

█ With respect to the motion to require a cost bond, section 13-16-101, C.R.S. 1973, requires the court in the case of a non-resident party to give security for the payment of costs. *See Edgar Coal and Silver Mining Co. v. Taylor,* 10 Colo. 110, 14 P. 113 (1887). The trial court in this case denied the motion because the petitioner's attorney agreed to guarantee the payment of court costs. *See* Code of Professional Responsibility, Disciplinary Rule DR 5-103(B). As costs were not awarded to the respondent, there was no prejudice to him by the court's failure to require

the bond mandated by statute. Accordingly, we find no reversible error in this respect.

## IV. DISCOVERY RULINGS

Respondent claims that the trial court committed error in failing to grant his motion to compel production of additional documents. The motion to compel was directed to such items as the petitioner's W-2 forms, a list of assets owned by two trusts, of which she is a discretionary beneficiary, a trustee's report on the condition of the trusts, and a profit and loss statement of a family corporation, Glickman, Inc., in which petitioner has a seventeen percent interest.

Petitioner apparently was unable to locate the W-2 forms requested but did furnish the respondent with copies of her income tax returns for the years 1971 through 1977. Petitioner also was unable to obtain a list of trust assets, a trustee's report, and a profit and loss statement of Glickman, Inc. However, petitioner did furnish copies of the trust agreements and supplied detailed information about the amounts she received yearly in trust distributions and dividends. Petitioner also answered interrogatories about her employment history, sources of income and expenses, and she furnished a virtual panoply of financial data covering the period from 1971 to the date of the answers to interrogatories. With respect to the respondent's request for a listing of assets owned by the trusts and Glickman,Inc., Norman H. Glickman, the trustee and brother of petitioner, filed an affidavit stating that he would not disclose the assets of the trusts to petitioner and would not disclose a profit and loss statement of Glickman, Inc. to petitioner.

The trial court held an extensive hearing on these discovery issues and denied the respondent's motion to compel. Considering the rather extensive financial information which petitioner furnished in the course of discovery, the questionable pertinency of the additional information requested by respondent, and the showing by petitioner that reports on the financial status of the trusts and family corporation were not within her ability to furnish, we find no abuse of discretion by the trial court in denying the respondent's motion to compel additional discovery. *Cf. Chicago Cutlery v. District Court,* 194 Colo. 10, 568 P.2d 464 (1977) (trial court has discretion to balance litigant's interest in obtaining information against burden imposed on opponent in furnishing it).

The trial court granted petitioner's motion for protective orders in connection with respondent's request for additional financial information about the two trusts and the family corporation. We conclude the trial court acted within its discretion because the petitioner previously had provided financial information in one form or another as it related to the issue of child support. Moreover, at best, much of the information sought was of questionable materiality to the issues involved in these proceedings. *See Mote v. Koch,* 173 Colo. 82, 476 P.2d 255 (1976).

The judgment is affirmed.
CHIEF JUSTICE HODGES does not participate.